**EXHIBIT "2"**

1 EAST STOW RD., P.O. BOX 994 MARLTON, NEW JERSEY 08053-0994
TELEPHONE (609) 596-3008
FAX (609) 596-6093

**FEDERAL EXPRESS**

May 9, 2005

Margar Associates Limited Partnership
c/o Proskauer, Rosen, Goetz
1585 Broadway
New York, NY 10036

RE: **Brownsville Associates**
 1. **REPORT ON REFINANCE OF PARTNERSHIP'S PROJECT MORTGAGE &**
 2. **REQUEST FOR APPROVAL OF GENERAL PARTNER SUBSTITUTION**

Dear Limited Partner:

This correspondence addresses changes to my letters of March 24, 2005 and April 18, 2005 as regards the proposed General Partner Substitution (#2, as captioned).

**Request For Approval of General Partner Substitution**

**March 24, 2005**

In this letter I requested your approval of proposed General Partner Substitutions. This request is hereby withdrawn.

**April 18, 2005**

This letter corrected certain provisions whereby certain General Partner substitutions would be made, subject to your approval. This request is hereby withdrawn. NO GENERAL PARTNER SUBSTITUTION IS PROPOSED AT THIS TIME.

**Report on Refinance of Partnership's Project Mortgage**

In order to eliminate further confusion, I am including the precise text from my letter of March 24, 2005. We are writing to inform you about an important refinance of your Partnership's Project mortgage. We are pleased to inform you that the Partnership has recently obtained a loan commitment that we believe will assure the continued viability of your investment for the near future. The Partnership's government subsidy will be dramatically reduced in the very near future and the Project is not feasible at the lower rents expected and the existing debt service requirements without a refinancing. **We believe refinancing as described below is necessary for the continued viability of your investment, and to avoid potential tax "recapture" that would likely result to you if the Partnership's project were to be foreclosed.**

May 9, 2005
Brownsville Associates

Briefly, the Partnership needs to refinance because its current government subsidy contract will expire on June 12, 2005. We have arranged for refinancing under a government program (with lower debt service to the Partnership). Most importantly, this government restructuring program (the "Mark-to-Market" program) will keep the Project's current government subsidy in place at a sufficient level that will permit not only the continued viability of your investment but also the possibility of modest distributions of cash to investors in future years. Without this government restructuring program, the project will likely fail.

**Background and Refinancing Details**

Congress enacted the Mark-to-Market Program to address expiring subsidy contracts such as the Partnership's. Under the HUD restructuring program, the Partnership will borrow approximately $2,649,800.00 and $8,373,437.43 as first and second mortgages. The second mortgage only needs to be paid from available cash. The total of the two mortgages therefore, will be about $11,023,237.43. The current mortgage balance is approximately $9,969,815.77. The "cash flow" second mortgage note will bear 1.5% simple interest and will be payable from 85% of surplus cash, with the remaining 15% of surplus cash flow available to the Partnership. All new mortgages will be due at term of 19 years from Closing, or about June 2024, about the same year the current mortgage is due to expire.

In order to be eligible for the Mark-to-Market Program, the Partnership must agree to extend its low-income use restrictions for 30 years for at least 20% of its units. The General Partner believes that this is a reasonable extension of the existing low-income rental restrictions, in light of the obvious financial benefits of the Mark-to-Market Program.

The Partnership receives about 80% of its revenue from the federal government under its Housing Assistant Program ("HAP") contract, a rent subsidy program for projects with qualified low-income tenants. Upon the earlier of the restructuring closing date or the expiration date of the existing HAP contract, the contract rents will be substantially reduced (to an amount that will subsidize only comparable market rents in the area of the project). We estimate this would be a reduction in revenue of about **$1,085,364** annually. If the refinancing is not completed under the Mark-to-Market Program, there will be no relief from the current debt burden. **Under these conditions the Project will most certainly fail.**

Proceeds of the HUD restructuring program will be used to repay the current mortgage and pay approved costs associated with the transaction. Under the Mark-to-Market Program, up to 80% of approved transaction costs will be financed with the new loans. The Partnership will be required to fund approximately **$61,860** of the transaction costs at closing. The General Partner has agreed to advance the money, if necessary, and the advances will be treated as a loan. The Partnership (or the General Partner) will be paid back its cash requirement with interest at HUD-approved rates over 84 months (about $948.84 monthly) before the 85/15 cash flow split between the HUD-required mortgage payments and the Partnership. Further, HUD will require (1) an increase in required deposits for capital reserves from about $56,826.36 to $123,750 annually, and (2) an initial deposit of $1,310,000 to the project's reserve for replacement account. Analysis

May 9, 2005
Brownsville Associates

indicates replacements over the first five years after Closing will amount to approximately $1,620,649.

The Project's Management Agent, Interstate Realty Management Company ("Interstate"), an affiliate of the General Partner, will have its regular management fees reduced as a consequence of the refinancing, based upon the proforma projections for this transaction. However, Interstate will be eligible to receive an Incentive Performance Fee, as permitted by the Mark-to-Market Program, of up to 3% of the gross income. Further, Interstate has negotiated with HUD the restructuring commitment (as to rents, proformas, repair and reserve requirements, etc.) on behalf of the Partnership pursuant to a Consulting Agreement with the Partnership. The Partnership will pay Interstate a consulting fee estimated at $64,372 from its cash reserves or, if required, a loan from the General Partner. This consulting fee is less than Interstate charges nonaffiliated owners.

As stated, Partnership cash flow hereafter will be reduced to 15% of "surplus cash" as defined by HUD, and is projected to be approximately $27,807 annually. We cannot however guarantee there will be any distributable cash flow in future years.

**Extended Use and Occupancy Restrictions and Partnership Agreement Amendment**

At closing, the Partnership will be required to execute an agreement that binds the Partnership and all future Project owners to keep at least 20% of the Project's units occupied by low-income families (those whose adjusted annual gross incomes are equal to or less than 50% of the area median income) for 30 years. Further, the rental rates for those units cannot exceed 30% of the "imputed income limitation" (as defined in Section 42 of the Internal Revenue Code of 1986, as amended) for such units.

HUD will require a standard Partnership Agreement Amendment that, among other items, requires that the Partnership not engage in any other business or operate any other rental project; not to amend the Partnership Agreement without HUD's consent; authorizes the General Partner to execute the refinancing documents; binds any incoming Partner to the terms of the HUD documents; prevents the Partnership from being dissolved without HUD approval; and makes any Partner liable for Project monies received unlawfully or for a partner's personal acts in violating the Regulatory Agreements.

**New Project HAP Contract**

The Partnership will get a new HAP Contract subsidy for a period of five years (subject to annual appropriations) after closing. The Partnership must accept renewals of the HAP Contract, for renewal periods determined by HUD and for which HUD determines that Congressional appropriations are available, for up to 30 years. If HUD does not offer to renew the HAP Contract within 90 days following expiration of any renewal period, the Partnership may refuse to accept such renewal and any future renewal, remaining bound only by the Extended Use and Occupancy Agreement as to 20% of the Project's units for the balance of the 30-year term.

May 9, 2005
Brownsville Associates

**No Action Required**

   No action is required of you. If you or your financial advisor needs any additional information about this transaction, please feel free to contact John J. O'Donnell, Chief Financial Officer at (856) 596-3008.

Very truly yours,

Brownsville Associates

Michael J. Levitt
General Partner

cc: John J. O'Donnell, Chief Financial Officer


\\Maintp3\d\M 2 M\Brownsville\BROWNSVILLELETTER 050502.doc