

ALLEN V. KOSS, ESQ.
SIMCHA D. SCHONFELD, ESQ.*
JACOB J. SCHINDELHEIM, ESQ.

*Also admitted in New Jersey

June 23, 2025

*Via Electronic Filing*
Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *Margar Associates Limited Partnership v. Levitt et al.*
      Case No.: 1:25-cv-03267-NGG-PK

Your Honor:

    This office represents the Plaintiffs in this action, and we write in response to Defendants' response to your order of June 13, 2025, ordering Defendants to show cause why the Court should not remand this case for lack of subject matter jurisdiction. As a preliminary matter, while Defendants make numerous factual allegations concerning the residence and citizenship of various parties, they offer no evidence to support any such claims and, as the party charged to show cause pursuant to this Court's Order, they have failed to satisfy their prima facie burden. Similarly, the accusation on page 5 of Defendants' brief that the undersigned played a "cat and mouse game" concerning jurisdiction, is belied by the communications affixed to their submission.

    Your Honor's Order states that none of the claims raised in the Complaint invoke a federal statue and that the questions raised by the Complaint do not appear to satisfy the *Grable-Gunn* test. We agree. We also agree that there is not complete diversity under 28 U.S.C. § 1332.

***Diversity***

    Defendants have asserted in their memorandum of law that Defendant Michael J. Levitt ("Levitt") is a citizen of the State of Maryland; Defendant Michaels Management-Affordable LLC ("MMA") is a limited liability company organized in the State of New Jersey, whose members are citizens of the States of New Jersey, South Carolina and Pennsylvania; and that Defendant Interstate Realty Management Company ("Interstate") was a New Jersey Corporation, and citizen of that State. No evidence has been submitted to establish the veracity of any of these claims.

Plaintiff Margar Associates Limited Partnership ("Margar"), is a limited partnership organized under the laws of the State of Connecticut (Exhibit A). Margar's general partner, Paramount BP LLC, is a limited liability company organized under the laws of Delaware (Exhibit B). We are informed by our client that Paramount BP LLC has multiple members, and that at least one member is a citizen of the State of New York. Our client has informed us that that the limited partner of Margar is a Connecticut limited partnership, Emgee Associates Limited Partnership ("Emgee") (Exhibit C).

We are informed that Emgee has numerous limited partners, some of which may be limited liability companies or limited partnerships; the details of which our client is not privity to. Any further inquiry into the chain of ownership of Emgee to the ultimate beneficial individuals or corporate owners, will most certainly require subpoenas to numerous non-parties. As such, discovery concerning non-parties outside the jurisdiction of this Court would, at best, be protracted and at most futile. *See Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 185, 188 (E.D.N.Y. 2022) (discussing the difficulty of establishing diversity jurisdiction where litigants are unincorporated entities, "the Court is not going to circumvent the statute [defining the requirements to invoke diversity jurisdiction] by finding that it has diversity jurisdiction based on a conclusory allegation of an interest holder's citizenship, the name, address, or any particulars of whom, or which, nobody knows.").

We have also been informed by our client that at least one partner of Emgee is likely a citizen of Pennsylvania. Accordingly, in accordance with Defendants' assertion that MMA is a citizen of Pennsylvania, diversity is not complete. *Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("for purposes of establishing diversity, a partnership has the citizenship of each of its partners" *citing Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)). "In suits involving limited partnerships, the court must look to the citizenship of all general and limited partners" to determine diversity. "*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663, 667 (S.D.N.Y. 1995) (*citing Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)); *see also*, *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019) (stating that an LLC was a citizen of every state of which it was a member; and that, when a member of the LLC was a limited partnership, the LLC was also a citizen of every state in which the member limited partnership's partners were citizens); and *400 E. 62Nd Props., LLC v. Grupo Cinemex S.A., No. 1:20-cv-04917 (JLR)*, 2025 U.S. Dist. LEXIS 79587, at *7 (S.D.N.Y. Apr. 28, 2025), ("the citizenship of the members of that LLC are relevant for diversity purposes, and so on.").

Furthermore, the Defendants concede that if Brownsville Associates, L.P. ("Brownsville" or the "Partnership") is a properly named defendant in this derivative action, then there would be no basis for diversity. Yet the Defendants claim that Brownsville is fraudulently joined as a defendant. This argument is unavailing. The Defendants aver that the Complaint is improperly pled as a derivative action, because the recovery Plaintiff is seeking would inure solely to Plaintiff's benefit. That assertion is incorrect. The core issue in the Complaint is the unauthorized payment of extra fees to the managing agent of Brownsville. If successful, the recovery of fees from the managing agent would go to Brownsville. As per the Brownsville partnership agreement, the general partner of Brownsville could then distribute the cash recovery to the Brownsville partners or use it to settle outstanding partnership liabilities. As seen in

Brownsville's most recent financial statement, Brownsville is in default under an $8 million HUD mortgage for more than a year (see excerpt at Exhibit D). Accordingly, any cash recovered would be directed to the payment of the delinquent HUD debt and will inure to the benefit of the Partnership as a whole. The characterization of Plaintiff's claims as direct rather than derivative is lacking factual foundation.

Defendants correctly note that to prove fraudulent joinder, a "defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). As stated in *Rose v. Horan* (*Rose v. Horan*, No. 17-CV-6408 (MKB), 2018 U.S. Dist. LEXIS 154645, at *8 (E.D.N.Y. Sep. 10, 2018)), quoted by Defendants, "in derivative actions commenced on behalf of an LLC, the LLC is not a nominal party but instead a necessary party under Rule 19 of the Federal Rules of Civil Procedure." In *Rose,* this court stated that, "*this jurisdictional inquiry is preliminary to any decision on the merits,* and is *not meant to serve as a back door for getting a defendant's dispositive motions heard* in a preferred federal forum." *Id*. at *10. (*internal citations omitted*) (*emphasis added*). As demonstrated above, Brownsville is legitimately joined. "The Complaint asserts claims on behalf of Brownsville and specifically seeks that damages be awarded to Brownsville (see e.g. Complaint at ¶¶ 49-50, 55-56, 63-66, 72-74, 96).

"Where there is no allegation of 'outright fraud,' the party alleging fraudulent joinder must show that recovery is *per se* precluded under state law." *Id*. (*internal citations omitted*). In *Rose*, this court found that there was no diversity jurisdiction, as the state law claims were not precluded against the non-diverse defendant, and the defendant LLC was properly joined. *Id.* at 9-10 (*citing Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626 (S.D.N.Y. 2006); *holding* "as long as [plaintiff] may bring derivative claims on behalf of [defendant LLC], then [defendant LLC] is a true defendant that destroys complete diversity in this case.").

Further, as has been clearly elucidated by the courts in this circuit, in a derivative action, the domicile of an entity whose "management is aligned against the stockholder and defends a course of conduct which [the stockholder] attacks, there is 'antagonism' and the corporation should be aligned as a defendant." *Hebei Tiankai Wood & Land Constr. Co. v. Frank Chen & Kirin Transp., Inc.*, 348 F. Supp. 3d 198, 203 (E.D.N.Y. 2018) (*internal citations omitted*); *see also Patel v. Singh*, No. 21-CV-00759 (HG) (LGD), 2023 U.S. Dist. LEXIS 33172, at *8 (E.D.N.Y. Feb. 28, 2023). This "antagonistic relationship" between a plaintiff and a "nominal defendant" means the citizenship of the "nominal defendant" must be considered in determining the existence of diversity jurisdiction. (*Hebei Tiankai* at 206). *See generally Netwolves Corp. v. Sullivan,* 2001 U.S. Dist. LEXIS 5905, at *17 (S.D.N.Y. May 8, 2001) (*citing Smith v. Sperling, 354 U.S. 91, 77 S. Ct. 1112 (1957)* (antagonism exists with respect to a nominal defendant where a plaintiff alleges that the corporation wasted assets, and a demand on the board to commence an action would have been futile). Accordingly, as the Complaint asserts, management is aligned against Margar, and is defending a course of conduct to which Margar objects. Therefore, antagonism is present.

The holding in *Hines v. Azoth Inv. SPC Ltd.*, No. 21-CV-10309 (VSB), 2022 U.S. Dist. LEXIS 41124 (S.D.N.Y. Mar. 8, 2022) (cited on page 4 of Defendants' brief) is instructive. In *Hines*, the Southern District, citing *Lupo v. Human Affairs Int'l*, 28 F.3d 269 (2d Cir. 1994), declined to order limited discovery as to jurisdiction, noting that the need for a "rapid determination of the proper forum for adjudicating an action" was not present in that case, and therefore "out of respect for the congressional intent to restrict federal court jurisdiction, as well as the preference for resolving any doubts against removability," limited discovery was not appropriate and the action was remanded. This Court should exercise the same discretion as the court in *Hines* did and the action should be remanded for the same reasons stated in *Hines*.

*Federal Question Jurisdiction*

The questions raised by the Complaint do not satisfy the *Grable-Gunn* test. The *Grable-Gunn* test, as stated in *AMTAX Holdings 227, LLC v. CohnReznick LLP* sets a four-element test to determine if a state law claim falls within the federal question subject-matter jurisdiction of a district court of the United States. A federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *AMTAX Holdings 227, LLC v. Cohnreznick LLP,* 136 F.4th 32, 37 (2d Cir. 2025) (*citing Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14, 125 S. Ct. 2363, 2367 (2005)).

In *Amtax*, it was determined that, to be substantial, the federal issue must be "important to the federal system as a whole, not just the private litigants involved." *Id*. at 39 (*internal citations omitted*). That importance comes into play, "(1) when a state-law claim would yield an interpretation of federal law that would be controlling in numerous other cases," "or (2) when it challenges the action of any federal department, agency, or service," *Id*. (*internal citations omitted*). To address the second ground for substantiality first, this case contains no challenge to an action of an arm of the federal government.

Returning to the first ground for substantiality, it is clear that this action will not yield an interpretation of federal law that would be controlling in numerous other cases. Here, the case is based upon whether Incentive Performance Fees ("IPF"), already paid to the Partnership, were properly directed under the Partnership's partnership agreement. This is an action advancing traditional claims grounded in contact and tort law. No claim in this action will require this Court to divine the meaning, interpretation of application of a federal statute or legality of a rule or regulation.

Even if the federal issue were substantial, the fourth prong of the *Grable-Gunn* test, that the issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress", is not satisfied. *Amtax* holds that the principal factors for consideration include, "the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *Amtax* at 40 (*internal citations omitted*). In *Amtax* it was held that, in a case in which a participant in the Federal Low-Income Housing Program sued an accountant under state law for failing to account for a federal tax code provision in calculating a purchase price, the exercise of federal jurisdiction would "would disrupt the federal-state judicial balance." *Id.* at 41. "Exercising federal jurisdiction in every case that involves interpreting a

federal tax provision analogous to that sought in the instant case would invite countless accountant-malpractice claims in federal court—claims that traditionally fall within the purview of state regulation of professional conduct." *Id*. (*internal citations omitted*). Additionally, as stated in a case cited by Defendants, 'the mere need to apply a federal law in a state-law claim will [not] suffice to open the "arising under" door' and federal jurisdiction is 'confined ... to those [claims] that really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.'" [Riseboro Cmty. P'ship v. SunAmerica Hous. Fund No. 682, 401 F. Supp. 3d 367, 372 (E.D.N.Y. 2019)](quoting [Grable, 545 U.S. at 313](.)). "When the result [of a case] would be limited to the parties ... before the state court, the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts ... jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law." *Id*. (*internal citations omitted*).

Here, the federal courts would be inserting themselves into a partnership dispute which is traditionally heard in state court. If any breach of duty that implicated following a federal law due to participation in a federal regulatory scheme could be considered a federal question, there is no limit to the number of simple business disputes that would find themselves in federal court simply because they were disguised as posing federal questions.

Partly returning to the matter of a substantial federal issue, *Riseboro*, cited by Defendants, held that "the Court's ultimate determination would not be based on the specific language of [a contractual provision regarding the right of first refusal under a tax credit program] but rather on its interpretation of Congress' intent in drafting [a provision of the Internal Revenue Code]." *Riseboro*, 401 F. Supp. at 374. *Riseboro* additionally cited 28 USC 1340 as authority for subject-matter jurisdiction, as it involved an interpretation of an Act of Congress providing for internal revenue. *Id*. at 372. Here there is no such implication involving internal revenue, and no need to divine federal legislative intent.

Defendants' citation to [New York City Health & Hosps. Corp. v. WellCare of New York, Inc. (769 F. Supp.2d 250, 256 (S.D.N.Y. 2011))](.), is distinguishable. In *New York City Health & Hosps. Corp.*, the action was brought by a non-contracted health care provider against a Medicare Advantage provider. The health care provider had received a ruling from the Centers for Medicare & Medicaid Services ("CMS") stating that the Medicare Advantage provider had to pay a higher charge than they had been paying to the health care provider for emergency services. *Id*. at 254. In that case there was a dispute as to whether federal law had required the Medicare Advantage provider to pay the higher amount for amounts paid prior to the CMS decision. *Id*. at 256-57.

*WellCare* was distinguished by [Pritika v. Moore, (91 F. Supp. 3d 553, 559 (S.D.N.Y. 2015))](.). In *Pritika*, a derivative suit turned on issues relating to violations of the federal Foreign Corrupt Practices Act ("FCPA"), and accusations that the defendants did not comply with the FCPA, and implement controls to comply with it. *Id*. at 555-56. The court held that, "although [the defendants]'s compliance with the FCPA will be one of the critical issues in this litigation, this case does not implicate the validity of the FCPA or the requirements that the Act imposes." *Id*. at 559. In distinguishing *WellCare*, the court emphasized that *Pritika* did "not involve the

application of 'complex reimbursement schemes'" as in *WellCare*, or a "web of rate-making laws and regulations," as in another case. *Id*.

As stated, in the instant case, the Complaint does not make it apparent that the Court must parse the nuances of the law governing IPFs, or determine the amount of Incentive Performance Fees payable under the program applicable to the property owned by the Partnership. The fees were already paid by the Partnership. Defendants merely assert that the way the IPFs were distributed violated black-letter public law, state law duties, and the private law of the partnership agreement.

In [*Podems v. Cangemi*, (No. 24-CV-4226-NRM-JRC, 2025 U.S. Dist. LEXIS 68043 at *6 (E.D.N.Y. Apr. 9, 2025))](), cited by Defendants, this Court held that the case failed the *Grable-Gunn* test, because, "at its heart, this action turns not on any actually disputed or otherwise substantial questions of federal law, but on whether the Individual Defendants violated their state law fiduciary duties." This Court reasoned:

> It is true that the Complaint alleges that Defendants violated their state-law obligations by, *inter alia*, failing to make complete and timely disclosures to shareholders about NYCB's preparedness to comply with heightened regulatory standards mandated by federal banking statutes and regulations, after NYCB's acquisition of certain assets resulted in its change of status to a "Category IV" institution. But these and other factual assertions in the Complaint upon which Defendants rely to support removal simply do not give rise to the exceptional circumstances mandated by *Gunn* and its progeny that must be satisfied for the Court to find that Plaintiff's state-law claims actually "aris[e] under" federal law. 28 U.S.C. § 1331; *see* [*Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 913 (2d Cir 2024)] (noting that "[u]pon careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial." *Id*. at *6-7.

Here, as stated above, this claim is not one of the "exceptional circumstances" covered by the *Grable-Gunn* standard.

As this Court lacks subject matter jurisdiction, it is therefore respectfully submitted that this matter should be remanded to the Supreme Court of the State of New York

Respectfully submitted,

Simcha D. Schonfeld, Esq.
Jason H. Kramer, Esq.